## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AARON SKUTNICK<br>P.O. Box 6<br>Moscow, PA 18444 | : <br> : <br> : <br> : | |
| Plaintiff, | : <br> : | JURY DEMANDED |
| v. | : <br> : | |
| BILL'S SHOPRITE OF DALEVILLE<br>921 Drinker Turnpike<br>Covington Township, PA 18444 | : <br> : <br> : <br> : | No. |
| Defendant. | : | : |

### CIVIL ACTION COMPLAINT

And now Plaintiff, AARON SKUTNICK, by and through his undersigned counsel, files this Complaint alleging that his rights, pursuant to the Americans with Disabilities Act and its 2008 amendments ("ADA"), 42 U.S.C. § 12101 et seq.; the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq., and Pennsylvania common law have been violated and avers as follows:

### PARTIES

A. The Plaintiff

1.      Plaintiff, Aaron Skutnick ("Skutnick" or "Plaintiff") is an adult individual residing in Lackawanna County at P.O. Box 6, Moscow, PA 18444.

B. The Defendant

2.      Defendant, Bill's Shoprite of Dalevile, ("Shoprite" or "Defendant") is a business entity that conducts business at 921 Drinker Turnpike; Covington Township, PA 18444.

1

3.      At all times, Defendant the statutory definition of an "employer" as defined by the ADA and the PHRA.

## JURISDICTION AND VENUE

4.      This Complaint alleges discrimination on the basis of Skutnick's disability status, and retaliation, in violation of the Americans with Disability Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"); and pendent state law claims arising under the provisions of the laws of the Commonwealth of Pennsylvania, to wit, the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and Pennsylvania common law.

5.      Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

6.      This Honorable Court has jurisdiction of this matter, case and controversy pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 42 U.S.C. § 2000e-5(f).

7.      Additionally, pursuant to 28 U.S.C. §1367, this Court has Supplemental jurisdiction to hear all of Skutnick's claims arising under the Pennsylvania Human Rights Act ("PHRA") and Pennsylvania common law.

8.      Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this Judicial District.

## ADMINISTRATIVE PROCEEDINGS

9.      On or about July 1, 2020, Skutnick filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was docketed as EEOC Charge No. 530-2020-04501 alleging discrimination, retaliation and wrongful discharge from his employment due to the actions of Defendant, and dual filed with the Pennsylvania Human Relations Commission ("PHRC").

10.     Skutnick has been advised of his individual right to bring a civil action by receiving a Notice of Rights from the EEOC, dated September 30, 2020 (attached hereto as Exhibit "A").

11.     Skutnick has exhausted the administrative remedies available to him, and all necessary and appropriate administrative prerequisites to the filing of this Complaint have occurred and been satisfied.

<u>OPERATIVE FACTS</u>

12.     Shoprite hired Skutnick on July 23 2019 as a clerk in its café department.

13.     Skutnick is also disabled with asthma.

14.     Skutnick's asthma impacts one or more of his major life activities, including but not limited to his ability to breath and to work.

15.     Despite these physical limitations, Skutnick was able to meeting the essential duties of his position as a clerk.

16.     On December 16, 2019 Skutnick was working when he suffered a contusion to his groin lower abdomen.

17.     Due to this injury Skutnick was instructed by his doctor to not work from December 21, 2019 until December 26, 2019.

18.     Skutnick also applied for Workers Compensation due to this injury, which was subsequently awarded.

19.      On December 26, 2019 Skutnick's medical provider advised that he could return to work on a light duty basis.

20.     Skutnick worked on December 28 and December 29, 2019 in a light duty position.

21.     Skutnick attempted to work on January 3, 2020 without any restrictions, but the pain from his injury intensified.

3

22.     On January 4, 2020 Skutnick's medical provider instructed that he not work until he received the results of an ultrasound.

23.     On January 14, 2020 Skutnick was cleared to return to work on a light duty basis. Specifically, Skutnick was instructed to not squat, climb, pull, or push. Skutnick was also instructed to not stand or walk from more than 1-2 hours at a time.

24.     On January 25, 2020 Skutnick's restrictions were again modified. Skutnick was permitted to work on a part time basis, could stand for 1-2 hours, walk for 1-4 hours, and sit for 1-4 hours. Skutnick was permitted to occasionally bend, squat, and climb but was instructed to not lift more than 10 lbs.

25.     On or about March 15, 2020 Skutnick was working when began to feel sick with symptoms that suggested that Skutnick had a bronchial infection.

26.     Skutnick's supervisor, Matt Fabbri, instructed Skutnick to leave work.

27.     Over the following weeks, Skutnick attempted to obtain a COVID-19 test but was having difficulty in obtaining a test because her was no longer exhibiting any symptoms of a bronchial infection.

28.     In mid-April Skutnick had two phone conversations with Kelly Pullice, Defendant's Human Resources representative. In these conversations Skutnick explained that he was having difficulty in obtaining COVID-19 testing.

29.     Skutnick also explained that his asthma placed him in a higher risk if he contracted COVID-19. Skutnick asked Ms. Pulice if Defendant would temporarily place him in an overnight stocking position so that he could limit his exposure to others. Ms. Pulice told Skutnick that he would have to demonstrate that he was qualified to work in that position.

30.     On April 17, 2020 Skutnick contacted Ms. Pulice and told her that he received a test confirming that he was negative for COVID-19. Ms. Pulice informed Skutnick that he would need an additional doctor's note indicating that he was medically cleared to return to work before Defendant would allow him to return.

31.     Skutnick attempted to obtain this note in an expeditious manner, but had difficulty scheduling an appointment with a doctor to obtain this return to work note.

32.     On or about May 15, 2020 Skutnick provided Defendant with a medical release to return to work.

33.     On or about May 15 2020, Skutnick also provided Defendant with a medical bill for the ultrasound procedure that he received due to his work injury.

34.     Laura Bracey, Defendant's Human Resources Manager, telephoned Skutnick and informed him that Defendant decided to terminate his employment because sales in the café department had decreased.

35.     Defendant's explanation for Skutnick's termination is pretextual, as Defendant did not terminate Skutnick's coworkers and because there were vacant positions available for which Skutnick was qualified.

36.     Shortly after his termination, Skutnick learned that Defendant had cancelled his health insurance coverage on March 30, 2020 but had neglected to tell him.

<u>CAUSES OF ACTION</u>

COUNT I
AMERICANS WITH DISABILITIES ACT

37.     Skutnick incorporates all the preceding paragraphs as if they were set forth at length herein.

38.     Based on the foregoing, Skutnick alleges that Defendant violated the ADA by subjecting him to discrimination on the basis of his actual and/or perceived disabilities and/or records of impairment.

39.     Skutnick further alleges that Defendant violated the ADA by failing to engage him in the interactive process and provide him with reasonable accommodations for his disabilities.

40.     Rather, Defendant terminated Skutnick because of his actual and/or perceived disabilities and/or records of impairment on in retaliation for requesting reasonable accommodations.

41.     Defendant's conduct caused Skutnick to sustain significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Skutnick has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

42.     Skutnick prays that Defendants be required to provide all appropriate remedies available under the ADA.

COUNT II
VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

43.     Skutnick incorporates all the preceding paragraphs as if they were set forth at length herein.

44.     Based on the foregoing, Skutnick alleges that Defendant violated the Pennsylvania Human Relations Act ("PHRA") by subjecting him to discrimination on the basis of his actual and/or perceived disabilities, and/or records of impairment.  Skutnick further alleges

that Defendant violated the PHRA by failing to engage him in the interactive process and provide him with reasonable accommodations for his disabilities.

45.     Skutnick further alleges that Defendant violated the PHRA by retaliating against him for requesting accommodations for his disability.

46.     Defendant's conduct caused Skutnick to sustain significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Skutnick has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore..

47.     Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* Skutnick demands attorneys' fees and court costs.

COUNT III

WRONGFUL TERMINATION-PENNSYLVANIA COMMON LAW

48.     Skutnick hereby incorporates and restates the allegations contained in the preceding paragraphs as if set forth at length herein.

49.     Defendant's conduct towards Skutnick, as described above and incorporated herein, constitutes a wrongful termination of Plaintiff in that it violated public policy.

50.     Skutnick exercised a protected right in filing a Workers' Compensation claim.

51.     Defendant was motivated to discharge Plaintiff and his termination was a direct consequence of his filing a Workers' Compensation claim.

52.     Defendant's motivation in terminating Skutnick's employment was to stifle, restrict and chill his and other employees' protected rights to file Workers' Compensation claims in the event of workplace injuries.

53.     As a proximate result of Defendant's conduct, Skutnick sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, lost benefits, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Skutnick has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

54.     As a result of the conduct of Defendant, Skutnick hereby demands punitive damages.

**LAW OFFICES OF ERIC A. SHORE, P.C.**


BY: /s/ Brian M. Doyle (PA Id. 319475)
**BRIAN M. DOYLE, ESQUIRE**
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Tel: (215) 944-6113
Email: briand@ericshore.com
*Attorney for Plaintiff, Aaron Skutnick*

Date: 12/2/2020

## **VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.S § 4904, relating to unsworn falsification to authorities.

Dec 1, 2020
_____
Date

_Aaron Skutnick (Dec 1, 2020 19:22 EST)_
_____
Aaron Skutnick